Commonwealth *v.* Equitable Gas Company,
Appellant.
Commonwealth *v.* United Gas Improvement
Company, Appellant.

Argued May 26, 1964.   Before BELL, C. J., JONES,
COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Ronald M. Katzman,* for appellant.

*Albert J. Tomalis,* with him *Charles W. Hull,* and
*Hull, Leiby and Metzger,* for appellant.

*John J. Gain,* Assistant Attorney General, with
him *Walter E. Alessandroni,* Attorney General, for
Commonwealth, appellee.

*Howell C. Mette, Frank A. Sinon,* and *Rhoads, Sinon & Reader,* for amici curiae.

OPINION BY MR. JUSTICE ROBERTS, July 1, 1964:

We are called upon in these two appeals to decide whether appellant-public utility companies are subject, under the Selective Sales and Use Tax Act,[1] to tax on their purchases and use of gas and electric meters placed on customers' premises. The Department of Revenue, by assessment in one case and by denial of refund in the other, concluded that use of the meters is taxable under the Act.[2] The Board of Finance and Revenue, by unanimous order, reversed the determinations of the Department of Revenue. On appeal, the Commonwealth Court held that appellants' use of meters on customers' premises was subject to the use tax provisions of the Act.[3] These appeals followed.

Both appellants are Pennsylvania public utilities engaged in the production, distribution and sale of natural gas to Pennsylvania customers, and one (UGI) also produces, distributes and sells electricity. Both taxpayers operate under the provisions of the Pennsyl-

---

[1] Act of March 6, 1956, P. L. (1955) 1228, as amended, 72 P.S. §3403-1 et seq. (Supp. 1963). The 1963 amendments are entitled "The Tax Act of 1963 for Education." Act of May 29, 1963, P. L. 49, §2, 72 P.S. §3403-1 (Supp. 1963).

[2] The Department of Revenue, by Selective Sales and Use Tax Act Regulation 227 and its supplements dealing with the public utility exclusion, listed gas and electric meters as nonexempt. 2 CCH, Pa. Tax Reporter ¶64-227.4.

[3] The Equitable Gas case involves the period March 7, 1956, to September 30, 1958, and the UGI case covers the period from August 29, 1958, to February 29, 1960. Although the definition section of the Act was amended several times during the periods covered by these appeals, the court below properly took the view—and the parties do not contend otherwise—that the amendments do not affect the substantive question of taxability or the result to be reached.

vania Public Utility Law,[4] subject to the jurisdiction of the Public Utility Commission and in accordance with tariffs filed with the Commission.

"In connection with these activities they install what are known as 'meters' or 'customers' meters,' either inside the home of the consumer or on the outside and physically attached thereto, and for the purposes of this case the gas and electric meters may be treated as identical. These are the meters with which every homeowner and, indeed, every user of gas or electricity is familiar."[5]

The Act imposes a tax on ". . . the use, . . . within this Commonwealth of tangible personal property purchased at retail. . . ."[6] It also defines "use" and then states: ". . . provided further, That the term 'use' shall not include . . . The use or consumption of tangible personal property including, but not limited to machinery and equipment and parts . . . directly in any of the operations of . . . The producing, delivering or rendering of a public utility service. . . . The exclusions . . . shall not apply to tangible personal property or services to be used or consumed in managerial sales or other non-operational activities."[7]

Appellants contend that meters are an essential part, physically, functionally and legally, of the system of providing gas and electric service to customers. They urge that such customer meters are used directly in the operation of "delivering or rendering of a public utility service" and are, therefore, exempt under the above utility exclusion provision. The Com-

---

[4] Act of May 28, 1937, P. L. 1053, as amended, 66 P.S. §1101 et seq.

[5] From the opinion of the court below.

[6] Section 201(b), as amended, 72 P.S. §3403-201(b) (Supp. 1963).

[7] Section 2(n)(4)(c)(iii), as amended, 72 P.S. §3403-2(n)(4)(c)(iii) (Supp. 1963).

monwealth vigorously replies that meters are not used in delivering or rendering of public utility service but argues that their function is to measure and record customer utilization. The argument continues that meters are used "in managerial sales or other non-operational activities," a use made specifically taxable.

We are not here presented with statutory language which requires either a search for legislative intention or the application of rules of statutory construction. The public utility service language is clear and unmistakable. The Legislature has classified not only the public utility property uses excluded from taxation, but also the property upon which the tax is imposed. The determinative inquiry here is whether meters are used in the direct operational function of rendering a public utility service or whether the property is utilized in the nonoperational ("managerial sales") activities.

Although "public utility service" is not defined in the Act (and there appears no reason why the Legislature should engage in repetitive definition of an already well understood term), there is no uncertainty, as to what it embraces. The Legislature, in the Public Utility Law, defines "service" as being used "in its broadest and most inclusive sense, and includes any and all acts done, rendered, or performed, and any and all things furnished or supplied, and any and all facilities used, furnished, or supplied by public utilities . . . in the performance of their duties under this act to their patrons . . . and the public. . . ." Act of May 28, 1937, P. L. 1053, §2(20), as amended, 66 P.S. §1102(20).

The absence of a definition of "public utility service" in the Sales and Use Tax Act is a positive indication that the Legislature did not wish to disturb the categorization of service already established by statutory enactments, the Public Utility Commission and

decisional authorities. The character of such service remains precisely as it was prior to this Act.

The Public Utility Commission, by appropriate regulation,[8] requires appellants to render measured or metered service to its customers. Appellants also are required to provide, install, maintain and operate "all equipment necessary for the regulation and measurement of gas furnished to its customers."[9] Similarly, the tariffs filed with and approved by the Commission, as required by law, authorize the sale of metered service and commit the utilities to furnish and install the meters on the premises of the customer in order to deliver that type of service.[10] Thus, ap-

---

[8] Rule 7A of the Public Utility Commissions' Natural Gas Regulations provides: "All gas sold by a public utility shall be charged for by meter measurement. . . ."

[9] Rule 8 of the Natural Gas Regulations provides: "Each public utility, shall provide and install at its own expense, . . . and shall continue to own, maintain, and operate all equipment necessary for the regulation and measurement of gas furnished to its customers."

[10] Rule 8.1 of the Gas Service Tariff filed by UGI states: "The measurement of gas service shall be by meters furnished and installed by the Company."

The approved tariff filed by the Manufacturers Light and Heat Company, amicus curiae, during the period here involved, provides in part: "A customer shall provide, free of expense of the Company, a space satisfactory to the company for meters, regulators or other equipment of the Company which may be necessary for the rendering of adequate service. . . ." (Rule 4-3).

"Except as herein otherwise provided, the measurement of gas service shall be by meter furnished and installed by the Company. The Company will furnish each customer with a meter of such size and type as the Company may determine will adequately serve the customer's requirements. . . ." (Rule 15-2).

"In cases where meters are not available, due to circumstances beyond the control of the Company, and the necessity for rendering gas service to the customer is urgent, the Company may, by written agreement with the customer, commence service

pellants are legally required to render to their customers not merely gas and electric service but metered gas and electricity. The delivery and performance of such service, under the regulations imposed upon appellants, necessarily entails the use of meters. So employed, they function in the distribution line to the consumer and are used directly and operationally in the rendering of a metered utility service.

The Commonwealth concedes that property used in delivering gas or electricity up to the point of entry into the meter is used directly in the operation of a public utility service and is not taxable. However, the Commonwealth argues that equipment used beyond that point, including the meter itself, is not part of the operation of the service and that use of the meter is part of the managerial activities of the public utility. Such a result, in effect, places meters in the same category as office furniture, equipment, supplies and the like. To the contrary, the difference between the use of meters and of office items and their respective direct relationships to furnishing energy to a customer is apparent.

The position of the Commonwealth is unrealistic and unsupportable. Its weakness is that it fails to give adequate consideration to the physical and practical circumstance that only by transmission of the energy to and through the meter is the gas or electricity actually made available for the customer's use in the only legally permitted way. It is only in metered form that appellants may furnish and the customer may utilize this service.[11]

---

and render bills temporarily on the basis of estimated gas consumption." (Rule 15-3).

[11] The opinion of the court below points out that "It was conceded by all parties that a gas meter could be replaced by a section of pipe and an electric meter by a length of wire, and in each case the gas or electricity would be delivered to the cus-

We are satisfied that the Board of Finance and Revenue correctly determined that appellants' use of meters is within the public utility exclusionary provision as an exempt use under the Act. Cf. *Independence Township School District Appeal*, 412 Pa. 302, 194 A. 2d 437 (1963).

The judgments of the court below are reversed.

tomers' appliances just as if a meter were present . . .," and apparently relies upon the possibility of such substitutions. While the court's conclusion may be physically correct, it totally overlooks the legal necessity for the meters to be utilized in the operation.