INDIANA DEPARTMENT OF STATE REVENUE, GROSS INCOME TAX DIVISION *v.* AMERICAN DAIRY OF EVANSVILLE, INC.

[No. 1-1274A190. Filed December 29, 1975. Rehearing denied February 6, 1976. Transfer denied July 14, 1976.]

*Theodore L. Sendak,* Attorney General, *Robert S. Spear,* Deputy Attorney General, for appellant.

*Daniel F. Hewins, Iglehart, Hewins & Songer,* of Evansville, for appellee.

LYBROOK, J.—Defendant-appellant Indiana Department of State Revenue (State) appeals from a judgment granting plaintiff-appellee American Dairy of Evansville, Inc. (Dairy) a refund of certain sales and use taxes assessed and paid for the years 1968 through 1970. The issue presented is whether the trial court erred in determining that purchases of various items and substances used by Dairy in the production and processing of milk and milk products are exempt from the Indiana State Gross Retail Tax. IC 1971, 6-2-1-37, *et seq.* (Burns Code Ed.).

The exemptions challenged by the State are those granted for purchases of (1) insecticides, insect spray and bird repellent, (2) cleaning compounds and cleaning equipment, (3) refrigeration equipment, ice and dry ice, (4) plastic and wire milk cases and milk cans, (5) electrical energy for cold storage purposes. The State concedes that all of these items and substances are necessary for the proper production and distribution by Dairy of its milk and milk products. Each will be hereinafter considered in conjunction with the pertinent statutory exemptions as found by the trial court.

Initially, it should be noted that in construing the relevant statutory language granting the claimed exemptions, we are bound by the established rule of construction that in the presence of ambiguity the language of the statute must be strictly construed against the party

claiming the exemption. *Indiana Department of State Revenue* v. *RCA Corporation* (1974), 160 Ind. App. 55, 310 N.E. 2d 96; *Indiana Department of State Revenue* v. *Boswell Oil Co.* (1971), 148 Ind. App. 569, 268 N.E.2d 303.

## I.

The trial court found that the items or substances which we have previously designated into categories (1), (2) and (3) are exempt under one or more of the following subsections of IC 1971, 6-2-1-39 (Burns Code Ed.) :

(b) (1) : "Sales to farmers and other persons occupationally engaged in the business of producing food and commodities for human, animal or poultry consumption either for sale or for further use in producing such food and commodities for sale, of animal and poultry life to be *directly used by the purchaser in the direct production* of food and commodities, feed for such animals and poultry, and seeds, plants, fertilizers, fungicides, insecticides and other tangible personal property to be *directly used in the direct production* of food and commodities."

(b) (6) : "Sales of manufacturing machinery, tools and equipment to be *directly used by the purchaser in the direct production*, manufacture, fabrication, assembly, extraction, mining, processing, refining or finishing of tangible personal property ; . . . sales of agricultural machinery, tools and equipment to be *directly used by the purchaser in the direct production*, extraction, harvesting or processing of agricultural commodities and sales of tangible personal property to be *directly used by the purchaser in the direct production* or manufacture of any such manufacturing or agricultural machinery, tools and equipment."

(b) (10 : "Sales of any tangible personal property as a material which is to be *directly consumed in direct production* by the purchaser in the business of producing tangible personal property by manufacturing, processing, refining, repairing, mining, agriculture, horticulture, floriculture, or arboriculture." (Our emphasis.)

Each of these subsections shares in common the requirements that the items or substances be *directly* used or consumed in *direct* production. In *Indiana Department of State Revenue* v. *RCA Corporation, supra,* this court addressed

the question of whether air conditioning equipment installed to maintain environmental conditions conducive to the manufacture of color television picture tubes and component parts was "directly used" in "direct production" within the meaning of IC 1971, 6-2-1-39 (b) (6), *supra*. In determining that the air conditioning equipment did not fall within the exemption, it was written:

". . . In that attempt we also have the duty of adopting a definition which strictly construes the exemption against the taxpayer.

Reference to any dictionary will reveal that there are a variety of definitions to choose from. The State has called our attention to one in *Ind. Dept. of State Revenue, Gross Income Tax Division* v. *Colpaert Realty Corp.* (1952), 231 Ind. 463, 109 N.E.2d 415:

'As an adjective, the word "direct" means, among other things, immediate; proximate; without circuity. Black's Law Dictionary, Third Edition. It has been distinguished from collateral; consequential; incidental; and remote.' 231 Ind. at 477-478, 109 N.E.2d at 422.

Black's Law Dictionary (4th Ed., 1951) also states:

'Directly. In a direct way without anything intervening; not by secondary, but by direct, means. *Clark* v. *Warner*, 85 Okl. 153, 204 P. 929, 934; *Olsen* v. *Standard Oil Co.*, 188 Cal. 20, 204 P. 393, 396.'

The Supreme Court of Ohio adopted that definition in refusing to hold that purchased tools used to manufacture other tools used directly in the manufacture of a product were also used directly in that manufacture and thus exempt from use and sales taxes. *General Motors Corporation* v. *Bowers* (1959), 169 Ohio St. 361, 159 N.E.2d 739, 741, said:

'To so hold would constitute a disregard of the plain meaning of the word "directly" which the dictionaries define as "without the intervention of a medium or agent." It would seem beyond cavil that the manufactured tools are an intervention between the purchased tools and the final [product]'.

Whatever effect (whether positive or negative) that RCA's air conditioning or environmental control equipment may have on the tubes RCA manufactures, or on the process

of their manufacture, is exerted through the medium or agency of the environment (i.e., the air). The very name of the equipment, whether 'air conditioning' or 'environmental control', signifies that its immediate effect is on the surroundings in which the manufacturing process takes place and only remotely, through the intervening agency of those surroundings, on the tubes or on the process by which they are manufactured."

The State relies heavily upon the rationale of this decision in arguing that none of the items or substances found by the trial court to fall within the exemptions provided by subsections (b)(1), (6) and (10) of IC 1971, 6-2-1-39, *supra,* meets the requirement of being *directly* used or consumed in *direct* production.

The first items which we shall consider are insecticides, insect spray, bird repellent, and cleaning compounds used by the Dairy in and around its main processing plant to maintain a production environment conforming to standards required by the Indiana State Board of Health. The position taken by the State is that application of the test, found in *Indiana Department of State Revenue* v. *RCA Corporation, supra,* compels the conclusion that these items do not qualify for exemption, for as with the air conditioning equipment in that case, their immediate effect is not upon Dairy's food products but upon the environment in which the processing and production takes place.

Subsection (b)(1) of IC 1971, 6-2-1-39, *supra,* appears the most relevant to our inquiry at this point, for we do not believe it can be seriously questioned that Dairy falls within the class of "other persons occupationally engaged in the business of producing food and commodities for human . . . consumption." The problem with the State's analyis is its failure to recognize that in this particular subsection the Legislature has set forth specific examples of items and substances contemplated as qualifying for exemption, among them being insecticides and fungicides. It is a matter of

common knowledge that the direct impact of these substances is generally upon the environment or medium in or through which production occurs.

In this instance, application of the test of *Indiana Department of Revenue* v. *RCA Corporation, supra,* as interpreted by the State, must yield to the express language of the statute. Guided by that language, we conclude that Dairy's purchases of insecticides, insect spray, bird repellent and cleaning compounds qualify for the exemption provided by IC 1971, 6-2-1-39 (b) (1), *supra.* While cleaning compounds are not specifically listed therein, their use by Dairy to retard growth of harmful bacteria is functionally similar to the use of fungicides and therefore falls within the class of exempted items.

A somewhat different question is presented with respect to Dairy's cleaning equipment, specifically identified by the trial court as including sponges, scouring pads, towels, mops and wipers. Though clearly essential to the cleaning process, their impact is arguably less direct than that of the cleaning compounds. The drawing of a distinction at this point may seem unduly technical. However, the emphatic and repetitious language employed by the Legislature in expressing the requirement of directness reflects an intent that such technical distinctions be drawn. This apparent intent, when coupled with the principle requiring strict construction of exemption statutes against the taxpayer where ambiguity exists, leads us to the conclusion that the trial court erred in its determination that Dairy's purchases of cleaning equipment are exempt from taxation under one or more of the previously cited subsections of IC 1971, 6-2-1-39, *supra.*

## II.

Also found by the trial court to be exempt under one or more of subsections (b) (1), (6), and (10) of IC 1971, 6-2-

1-39, *supra,* are Dairy's purchases of refrigeration equipment, ice, and dry ice used at its production plant. We find no merit in the State's assertion that these items are not directly used in direct production but rather are used only after completion of the production process. The evidence reveals that these items operate directly upon Dairy's products throughout the production process to maintain their physical integrity. However, the State's central contention is that these items do not qualify for exemption since they are not actually incorporated into the final product. Our only response is that even the most narrow reading of the foregoing subsections of IC 1971, 6-2-1-39, *supra,* fails to support a conclusion that the exemptions provided therein are limited to items and substances contributing to the physical composition of the final product, and no authority has been advanced to support such a construction.

The State has therefore failed to demonstrate that the court erred in finding that Dairy's purchases of refrigeration equipment, ice and dry ice qualify for exemption.

### III.

The trial court found that Dairy's purchases of wire and plastic milk cases and milk cans qualified for exemption pursuant to subsection (b)(2) of IC 1971, 6-2-1-39, *supra,* which provides:

"Sales of nonreturnable wrapping materials and empty containers to be used by the purchaser as inclosures or containers for selling contents to be added, and returnable containers containing contents sold in a sale constituting selling at retail, and returnable containers sold empty for refilling. *As used in this clause, returnable containers means containers customarily returned by the buyer of the contents for reuse as containers; all other containers are nonreturnable containers.*" (Our emphasis.)

We agree with the State's contention that the items here in question are not returnable containers within the meaning

of this subsection. The evidence reveals that the wire and plastic milk cases are used by Dairy's employees as conveyances in delivering its products to purchasers. They are not retained by the buyers of Dairy's products and therefore not "returned by the buyer of the contents."

Neither do the milk cans fall within the foregoing subsection. The evidence reveals that these containers are used by Dairy to hold, measure, and convey raw materials during the production process. However, we are of the opinion that the court's conclusion that the milk cans are exempted by subsection (b) (2) is harmless error. They clearly constitute "tangible personal property directly used in the direct production" of Dairy's food products and therefore fall within the exemption provided by subsection (b) (1) of IC 1971, 6-2-1-39, *supra.*

Whether Dairy's purchases of wire and plastic milk cases used in the distribution of its products also qualify for exemption under that subsection presents a more serious question. In *State* v. *Farmers Tankage, Inc.* (1969), 144 Ind. App. 392, 246 N.E.2d 409, this court determined that appellee was entitled to exemptions for purchases of trucks and equipment used to collect from various sources the bodies of dead animals used to produce protein animal feed under subsection (b) (1) of IC 1971, 6-2-1-39, *supra,* which at that time read:

"(b) Nor shall the state gross retail tax apply to any of the following transactions:

"(1) Sales to farmers and other persons occupationally engaged in the business of producing food and commodities for human, animal or poultry consumption either for sale or further use in producing such food and commodities for sale, of animal and poultry life to be used by the purchaser for such production of food and commodities, feed for such animals and poultry and seeds, plants, fertilizers, fungicides, insecticides and other tangible personal property to be used for such production of food and commodities."

The court wrote:

> "The State of Indiana argues in this appeal that the Appellee is not entitled to the above exemption. The Appellant contends that the legislature in the adoption of the exemption did not intend to place such a broad construction so as to allow an exemption for transportation equipment used before the actual production processes begin.
>
> Appellant relies heavily on the principles stated in *Storen* v. *Jasper County Farm Bur. Co-Op Assn.*, 103 Ind. App. 77, 2 N.E.2d 432 (1936) that 'all exemption statutes, *where there is any ambiguity*, must be strictly construed against one seeking an exemption.' (our emphasis.) Section 64-2654 of Burns' Indiana Statutes Annotated is not, however, ambiguous. The statute does not contain the word 'directly' that Appellant would have us insert to modify 'used in such production.' "

Since the decision of that case, the statute has been amended to limit the exemption to sales of items *directly* used in *direct* production, and as Judge White noted in *Indiana Department of State Revenue* v. *RCA Corporation, supra:*

> "Both the State and RCA appear to be in agreement that the *Farmers Tankage* opinion implies that had the exemption clause contained the word 'directly', the purchase of the truck would not have been held to be exempt."

Analogy may be drawn between the collection of raw materials from various sources prior to production and, as in the case at bar, the distribution of goods to purchasers after completion of the production process. We are of the opinion that the amendment limiting the exemption to items *directly* used in *direct* production at the very least creates an ambiguity as to whether sales of items used in distributing final products are encompassed thereby. Accordingly, in keeping with the rule requiring strict construction against the taxpayer of statutes providing exemptions, we conclude that Dairy's purchases of wire and plastic milk cases do not qualify for exemption.

## IV.

Dairy maintains a cold storage facility for its products in Huntingburg, Indiana. The trial court found that Dairy's purchase of electricity used at this facility to draw off warmth and prevent spoilage of its products stored at that facility is exempt from taxation pursuant to IC 1971, 6-2-1-38 (c) (Burns Code Ed.), which provides:

"Every person engaged as a public utility in furnishing or selling electrical energy, natural or artificial gas or mixtures thereof, water, or steam or steam heating service to consumers for domestic or commercial consumption shall be and constitute a retail merchant in respect thereto, and the gross income received therefrom, except that part thereof received from sales to consumers for use in manufacturing, mining, production, refining, oil or mineral extraction and irrigation or to other public utility companies described in subsections (c), (d) and (e) of this section and except receipts from the provision, installation, construction, servicing or removal of tangible personal property used in connection with the furnishing of any such public utility service or commodity, shall constitute gross income of a retail merchant received from selling at retail: Provided, That the furnishings of any such utility service or commodity for such excepted commercial or industrial uses not separately metered for such uses shall in its entirety constitute selling at retail unless such service or commodity is predominantly used for one or more of said excepted uses, in which event it shall be deemed to be wholly used for such excepted uses."

Based upon reasoning analogous to that set forth in the preceding subdivision of this opinion, we conclude that the trial court erred in determining that the purchase of electricity for this facility is exempt from taxation. The purpose of the Huntingburg facility is to serve as an aid in the distribution of Dairy's final products. The exemption for electricity extends only to that used in production, and in light of ambiguity as to whether the term "production" encompasses distribution of the final product, we must construe the statute strictly against the taxpayer to deny the claimed exemption.

## CONCLUSION

The State has failed to demonstrate error in the court's findings that Dairy's purchases of insecticides, insect spray, bird repellent, cleaning compounds, refrigeration equipment, ice, dry ice and milk cans are exempt from the Indiana State Gross Retail Tax. However, the court erred in determining that Dairy's purchases of cleaning equipment, plastic and wire milk cases and electrical energy for cold storage purposes qualify for exemption. The judgment of the trial court is therefore affirmed in part, reversed in part and remanded to the trial court for modification of its judgment in favor of Dairy accordingly.

Affirmed in part; reversed in part and remanded.

Robertson, C.J. and Lowdermilk, J., concur.

NOTE.—Reported at 338 N.E.2d 698.