INDIANA DEPARTMENT OF STATE REVENUE *v.* INDIANAPOLIS TRANSIT SYSTEM, INC.

[No. 2-675A137. Filed November 18, 1976.]

*Theodore L. Sendak,* Attorney General, *Joseph J. Reiswerg,* Deputy Attorney General, for appellant.

*Lawrence McTurnan, Bredell, Martin & McTurnan,* of counsel, of Indianapolis, for appellee.

LYBROOK, J.—Defendant-appellant, Indiana Department of State Revenue (State) appeals from judgment in favor of plaintiff-appellee, Indianapolis Transit System, Inc. (ITS). State presents the following issues for our review:

(1)   Whether the Court's Finding of Fact (4), which reads:

"4.   Shortly after the passage of the sales and use tax by the Indiana Legislature, Mr. James H. Armington, Treasurer of the Indianapolis Transit System, inquired of the Indiana Department of State Revenue, as to whether the Plaintiff Corporation would be exempt under the provisions *of Burns' Indiana Statutes, Anno., Sec. 64-2654(b)(4),* and was advised by said Department that the Corporation was exempt in its purchases which were made in the operation of its business. Thereafter, the Corporation claimed exemption from the sales and use tax for all of its purchases which were reasonably and necessarily incurred in the operation of its business. These purchases upon which an exemption was claimed included the items set forth in Exhibit A to the Complaint filed by the Plaintiff." (Emphasis supplied).

was supported by sufficient evidence.

(2)   Whether the Court's Finding of Fact (8), which reads:

"8.   In addition, the parties have agreed that with respect to claim for refund of similar taxes which have been

paid by the Plaintiff and collected by the Department from and after December 31, 1970, to date, that this portion of the case should be severed and heard at a later time."

was supported by sufficient evidence.

(3) Whether the Court's Conclusion of Law, which reads: "The law is with the Plaintiff and against the Defendant in that the purchases which were claimed as exempt by the Plaintiff and unexempt by the Defendant, which resulted in this litigation, were exempt by virtue of *Burns' Indiana Statutes, Anno., Sec. 64-2654(b)(4)*, and that the charter bus service of the Plaintiff, did not constitute a lease so as to be taxable, but was a simple charter, whereby the Plaintiff retained absolute and permanent control over its buses at all times during the charter trips. Furthermore, there were no elements of a lease present in the charter bus service. The only distinction between those passengers of the Plaintiff Corporation riding as individuals and passengers riding on a charter bus line was that the latter had a common destination." (Emphasis supplied).

is contrary to the evidence and the law.

The facts most relevant to this appeal reveal that on November 30, 1971, State sent to ITS a Notice of Tax due in the amount of $11,717.11. The notice explained the tax due arose from "failure of taxpayer to report revenue for 'charter' bus rental in taxable sales and failure to report personal property purchased and not used *directly for public transportation* as being subject to the use tax." ITS is a corporation engaged in providing public transportation in the City of Indianapolis and is certified by the Public Service Commission of Indiana.

Several years prior to the receipt of this notice, on June 24, 1964, shortly after the announcement of the Indiana Sales and Use Tax, James Armington, the Treasurer of ITS, allegedly communicated with a representative of State and was advised by this representative that ITS would be exempt from the sales and use tax. In light of this exemption ITS did not report or pay sales and use tax on all items purchased

which were reasonable and necessary to the furnishing of public transportation. ITS also did not report or pay any sales and use tax on receipts from its charter bus service.

After an audit State determined that ITS owed tax for the tax years of 1968, 1969 and 1970 on revenue from the charter bus service and personal property purchased. ITS paid this tax under protest and paid an additional sum which represented sales and use taxes for similar items for the 1971 tax year.

On May 5, 1972, ITS filed a Complaint for Recovery of Improperly Collected Taxes. On December 19, 1974, trial was held, *de novo,* and on December 27, 1974, judgment was entered in favor of ITS. From this judgment, defendant appeals.

I.

The first issue for our consideration is whether the trial Court's Finding of Fact (4) was supported by sufficient evidence. State maintains that since the case was a trial *de novo,* any prior representations made by State which were offered and admitted into evidence were done so improperly and constituted error. When confronted with an allegation of insufficiency of evidence, this court as a reviewing tribunal, neither weighs the evidence nor resolves questions of witness' credibility but considers only the evidence most favorable to the appellee, together with all reasonable inferences deducible therefrom, and will sustain the judgment if there is substantial evidence of probative value to establish the findings. *Hidden Valley Lake, Inc.* v. *Kersey* (1976), 169 Ind. App. 339, 348 N.E.2d 674.

In the case at bar Armington's testimony directly supports the finding in question. State did not object to Armington's testimony until he was asked about the conclusions of the Hearing Examiner. Armington's testimony coupled with the stipulated facts amply support the finding.

Additionally, State complains that it was reversible error for the trial court to admit into evidence the letter which was referred to in Armington's testimony. In support of this position State cites *Coffey* v. *Wininger* (1973), 156 Ind. App. 233, 296 N.E.2d 154, in which Judge Hoffman writing for the court, held that hearsay evidence consisting of a letter would not be admissible into evidence under the public record exception to the hearsay rule where there was no proof of the authenticity; however, in *Coffey, supra,* as in the case at bar, even assuming the letter had been erroneously admitted, the erroneous admission of inadmissible hearsay evidence will not be cause for reversal where such evidence is merely cumulative in nature. Armington's testimony coupled with the stipulated facts is ample evidence to support the Court's Finding of Fact (4). The letter was merely cumulative.

## II.

The second issue for our consideration is whether the Court's Finding of Fact (8) was supported by sufficient evidence. State argues that, "There is no evidence in the record that there were ever any stipulations as to such a fact and matter." We do not need to decide whether there was a stipulation. The court's finding does not mention a stipulation, it merely states that the parties have *"agreed"* that the portion of the case from and after December 31, 1970, should be severed and heard at a later time. There is direct evidence in the record which supports this finding.

"Q. Now, Mr. Armington, aside from the amounts that were paid on December 28, 1971, are you making claim for additional amounts in this protest? [The December 28th payment was for tax years ending December 31, 1970.]

"A. Yes.

"Q. Have you been paying taxes to the State on items similar to those purchased?

"A. Yes, we have.

"Q. The same that is set forth in Exhibit 'A'?

"A. Yes, we have.

"MR. KAGAN: [Attorney for the State] I object. This isn't really relevant. They have asked for a refund and these other items are not in litigation here.

\* \* \*

"THE COURT: Well, it might be simpler if you waited to see what the Court did. If it rules in your favor, you might file a Supplementary Complaint to bring it up to date. If the Court ruled against you, you wouldn't have to.

"MR. McTURNAN: That would be satisfactory.

"THE COURT: Is that agreeable with the State?

"MR. KAGAN: Yes."

(Explanations in brackets added.)

It appears obvious that this evidence supports the finding in question. This court does not weigh the evidence, we will only reverse when the evidence is uncontradicted and will support no reasonable inference in the trial court's favor. *City of Beech Grove* v. *Schmith* (1975), 164 Ind. App. 536, 329 N.E.2d 605.

### III.

The third issue for our consideration is whether the Court's Conclusion of Law is contrary to the evidence and the law.

Initially State questions whether various items purchased by ITS and claimed as being exempt are in fact exempt from Indiana State Gross Retail Tax. IC 1971, 6-2-1-37, *et seq.* (Burns Code Ed.). First, it should be noted that in construing the relevant statutory language granting the claimed exemptions, we are bound by the established rule of construction that in the presence of ambiguity the language of the statute must be strictly construed against the party claiming the exemption. *Indiana Department of State Revenue* v. *American Dairy of Evansville* (1975), 167 Ind. App. 367, 338 N.E.2d 698; *Indiana Department of State Revenue* v. *RCA Corporation* (1974), 160 Ind. App. 55, 310 N.E.2d 96.

The trial court found that ITS was entitled to take exemptions under IC 1971, 6-2-1-39(b) (4) (Burns Code Ed.) which reads:

"(b) Nor shall the state gross retail tax apply to any of the following transactions:

\* \* \*

4. From the sale and from the storage, use or other consumption in this state of tangible personal property or service which is directly used or consumed in the rendering of public transportation of persons or property."

The State argues that the items claimed by ITS as being exempt are not "directly used or consumed in the rendering of public transportation of persons or property." Appellant points to *RCA, supra,* where this court determined that air conditioning equipment used to maintain environmental conditions at a level conducive to the manufacture of color television tubes was not "directly used" in "direct production" within the meaning of the statute. IC 1971, 6-2-1-39(b) (6), *supra.*

The issue now becomes whether these two cases are analogous and if not whether the trial court properly determined that certain purchases by ITS were exempt. The case at bar can be distinguished from *RCA, supra,* in at least two ways. First, the cases involve different parts of the exemption statute. *RCA, supra,* utilized IC 6-2-1-39(b) (6) (Burns Code Ed.). Judge White noted in that case:

". . . The Indiana Legislature wrote its exemption in words different from those used in any statute construed in the cases RCA cites, or in any cases we have read. Indiana requires that for the sale to be exempt the property purchases must not only be 'used directly' in the manufacturing process (as do the statutes of other states). but that it must be *'directly* used . . . in the *direct* production, manufacture,' etc.

"This repetition of the requirement that the use be direct cannot be treated as surplusage unless no other course is open. . . . Since it is reasonable to assume that the legislative purpose in repeating the directness requirement was to avoid what may have been considered overly broad

judicial construction of the single directness requirement in other states, . . ."

In the case at bar, however, we are confronted with the "single directness requirement" mentioned above. As stated earlier the state gross retail tax shall not apply to transactions "From the sale and for the storage, use or other consumption in this state of tangible personal property or service which is directly used or consumed in the rendering of public transportation of persons or property." IC 6-2-1-39 (b) (4) (Burns Code Ed.). As Judge White implied in *RCA, supra,* a single directness requirement might allow a broader judicial construction.

The second distinction between the case at bar and *RCA, supra,* is the necessity of the items purchased to the process for which the expenditure was made. In *RCA, supra,* color television tubes could be manufactured without the air conditioning. (RCA argued that the quality of the product would suffer without the air conditioning.) In the case at bar ITS could not continue operating without the purchases it claimed should be exempted. ITS maintains that it ". . . is required by the Legislature and Public Service Commission to provide many services to its passengers which involve much paper work such as publications concerning financial matters, insurance, schedules, routes and rates. It must provide passenger stations, handle baggage, sell tickets and buses must be clean and safe for the passengers . . . ITS would not be permitted to operate or render any transportation service if it did not comply with such requirements."

As illustrated above, the case at bar can be distinguished from *RCA, supra,* therefore, the issue becomes whether the trial court was justified in determining that certain purchases were exempt from tax. In light of the necessity of the items purchased to the operation of ITS coupled with Judge White's suggestion that a "single directness" standard might allow a broader judicial construction, we determine that the trial

court did not err in holding the items purchased as being tax exempt.

Next, State contends that ITS's charter bus service constitutes a lease and therefore would be subject to the gross retail tax, IC 1971, 6-2-1-38(L) ; Burns Ind. Stat. Ann. § 64-2652(1), which provides:

> "(1) Effective May 1, 1965, every person, except a public utility, engaged in the business of the rental or leasing of tangible personal property shall be deemed to be a retail merchant in respect thereto and such leasing transaction shall constitute selling at retail subject to the state gross retail tax on the amount of the actual receipts from such rental or leasing, the same as though such receipts were received from a sale of the leased property made by a retail merchant engaged in selling at retail and subject to all of the exemptions applicable to the imposition of such tax; the purchase by any such person of such tangible personal property which is rented or leased in the regular course of such person's business shall constitute a purchase for resale and shall not be subject to the gross retail tax and the use of such property in such person's rental or leasing business shall not be subject to the use tax; and the sale by any such person of tangible personal property which has been rented or leased in the regular course of such person's rental or leasing business shall be subject to the gross retail tax and use tax; . . ."

Plaintiff maintains that this statute does not apply to its charter service because the charter service was not a lease of tangible personal property, but rather was a provision of a service, *i.e.* transportation. Apparently, the issue of whether there is a distinction between a charter and a lease; and if there is a distinction, whether that would remove ITS' charter service from taxation under IC 1971, 6-2-1-38 has never been determined in Indiana. The State maintains that there is no distinction between a charter and a lease and "because these words are interchangeable the receipts from such an operation would be taxable."

For aid in the determination of this issue we must look to other jurisdictions. *Travelers Ins. Co.* v. *Pond,* Ohio Com.

Pl. (1957), 143 N.E.2d 189 held that: "Whether certain circumstances created a lessor-lessee . . . relationship between the parties is a *matter of fact* dependent on possession of and control over property involved." (Emphasis added.) ". . . It is the possession of the truck which is the controlling consideration in determining whether a lease arrangement was consummated." *Thomas* v. *Foglio* (1961), 225 Ore. 540, 358 P.2d 1066. *Thomas, supra,* names several tests to help in determining who has the "right of control," some of which are as follows:

(1) The employment of the driver.

(2) The right to direct movement of the bus.

(3) Obligation to pay costs and repairs.

(4) Obligation to pay fuel costs.

(5) The responsibility of garaging the vehicle.

(6) Payment of insurance and license fees.

In the case at bar ITS furnished the drivers with the bus, it retained the right to direct the movement of the buses, it was obligated to pay all costs and repairs as well as fuel costs. ITS had the responsibility to garage the vehicle and make all insurance payments, license payments as well as payments for any damages caused by the bus. It is apparent that ITS retained the "right to control" according to the tests presented in *Thomas, supra.* State concedes in their brief that ITS retained possession. The arrangement between ITS and its charter passengers is clearly different from the lease arrangement as it is described in *Thomas, supra.* We determine that there is a distinction between a "lease" and a "charter."

One other case adds credibility to our determination that ITS provides a charter service that is distinguishable from a normal leasing relationship.

"The question as to the character in which the charterer is to be treated is, in all cases, one of construction. If the charter-party let the entire vessel to the charterer with

a transfer to him of its command and possession and consequent control over its navigation, he will generally be considered as owner for the voyage or service stipulated. But, on the other hand, if the charter-party let only the use of the vessel, the owner at the same time retaining its command and possession and control over its navigation, the charterer is regarded as a mere contractor for a designated service, and the duties and responsibilities of the owner are not changed. In the first case, the charter-party is a contract for the lease of the vessel; in the other, it is a contract for a special service to be rendered by the owner of the vessel." *Leary* v. *U.S.* (1872), 14 Wall 607, 20 L.Ed. 756.

Next, we focus our attention to the question of whether this charter service was intended to be taxed under the statute in question. It appears to us that this statute was designed to tax leasing arrangements that resemble sales, where possession of property changes from lessor to lessee. We agree with ITS's contention that there is really no difference between its charter service and its regular service except that charter passengers have a common destination. Providing a transportation service is distinguishable from leasing tangible personal property and is not subject to the tax in question.

Judgment affirmed.

Robertson, C.J. and Lowdermilk, J., concur.

NOTE.—Reported at 356 N.E.2d 1204.