**INDIANA DEPARTMENT OF STATE REVENUE, GROSS INCOME TAX DIVISION, Defendant-Appellant,**

v.

**INDIANA HARBOR BELT RAILROAD COMPANY, Plaintiff-Appellee.**

**No. 3–283A43.**

Court of Appeals of Indiana,
Third District.

Feb. 27, 1984.

Linley E. Pearson, Atty. Gen. of Ind., Dan S. LaRue, Deputy Atty. Gen., Indianapolis, for defendant-appellant.

Harold Abrahamson, Kenneth D. Reed, Abrahamson, Reed & Tanasijevich, Hammond, for plaintiff-appellee.

GARRARD, Judge.

Defendant-Appellant Indiana Department of State Revenue, Gross Income Tax Division (the Department) appeals from the trial court's grant of summary judgment in favor of the plaintiff-appellee Indiana Harbor Belt Railroad Company (the Railroad). The judgment provided for a refund of certain sales and use taxes assessed by the Department and paid under protest by the Railroad for the tax years 1973, 1974 and 1975.

The Railroad is a public carrier engaged in interstate commerce between the States of Indiana and Illinois with its principal offices, operations and properties located in Hammond, Indiana.

The Department conducted an audit of items of personal property purchased by the Railroad in the tax years 1973, 1974 and 1975 and demanded payment of tax on certain purchases which the Railroad had claimed to be exempt from taxation. The Railroad paid, under protest, the amount of $101,388.68 claimed due, and filed a claim for refund with the Department. The Railroad did not accept the Department's proposed refund and then filed this suit for refund in the Lake County Superior Court. The suit subsequently was transferred to the Newton Circuit Court.

The parties stipulated to the accuracy of a list describing over 500 items of personal property purchased and its usage by the Railroad. On the Railroad's motion for summary judgment, the list was submitted to the trial court for determination of the applicability of the exemption statute, IC 6–2–1–39(b)(4), to the listed items and the amount of refund, if any, to which the Railroad was entitled.

The trial court concluded, *inter alia*, that the vast majority of the items

"... are exempt from sales/use tax by reason of being tangible personal property stored, used or otherwise consumed by plaintiff in the State of Indiana in the rendering of public transportation of property and goods."

Transcript, pp. 203–11, Court's Findings. The trial court concluded that the balance of the items

"... are non-exempt from sales/use tax by reason of being intangible personal property stored, used or consumed by plaintiff in the State of Indiana in the

rendering of public transportation of property and goods."

Transcript, pp. 203–11, Court's Findings.

On the basis of these conclusions, a refund was ordered in the principal sum of $62,585.27.

## ISSUES

1. Whether the trial court erred in concluding that certain purchases of tangible personal property stored, used or consumed by the Railroad in rendering public transportation were exempt from sales or use tax without a specific conclusion that the items were *directly* used or consumed in the rendering of public transportation.

2. Whether the trial court erred by failing to apply guidelines found in the Department of Revenue Regulations when making the exemption determination.

3. Whether the trial court's conclusion that the items of tangible personal property purchased by the Railroad were exempt from sales or use tax because used or consumed in the rendering of public transportation was contrary to the law.

IC 6–2–1–39 [1] provides, in pertinent part, that the gross retail tax generally imposed by IC 6–2–1–37 [2] shall not apply to:

"(b)(4) The sale, storage, use or other consumption in this state of tangible personal property or service which is directly used or consumed in the rendering of public transportation of persons or property."

IC 6–2–1–43 [3] provides a similar exemption for the use tax imposed by IC 6–2–1–41 [4] by reference to subsection (b) of IC 6–2–1–39 cited in part above.

As noted in appellee's brief, the legislature used the phrase "*directly* used by the purchaser in the *direct* production of...." (emphasis added), or a phrase substantially similar, when describing the conditions for exemption from taxation for

purchases by: Farmers and food producers—IC 6–2–1–39(b)(1); tool and equipment manufacturers—(b)(6); producers of tangible personal property—(b)(10), and utilities —(b)(16)–(18). Appellee's brief, p. 15. This phrase represents the "double-directness" test which has been interpreted and applied in several cases since the amendment of the exemption statute. *Indiana Department of State Revenue v. Cave Stone, Inc.; Indiana Department of State Revenue v. Meshberger Stone, Inc.* (1983), Ind., 457 N.E.2d 520; *Indiana Department of Revenue v. U.S. Steel Corp.* (1981), Ind. App., 425 N.E.2d 659; *State v. Calcar Quarries, Inc.* (1979), Ind.App., 394 N.E.2d 939; *Indiana Department of Revenue v. American Dairy of Evansville, Inc.* (1975), 167 Ind.App. 367, 338 N.E.2d 698; *Indiana Department of Revenue v. RCA Corporation* (1974), 160 Ind.App. 55, 310 N.E.2d 96.

However, IC 6–2–1–39(b)(4), which is here in issue uses the phrase "which is directly used or consumed in the rendering of public transportation...." In Section 39(b)(4), unlike the other sections, the directness requirement appears only once thus, by contrast, giving rise to a "single-directness" standard. *Indiana Department of Revenue v. Indianapolis Transit System, Inc.* (1976), 171 Ind.App. 299, 356 N.E.2d 1204. *See also RCA, supra.*

A chronological summary of the cases which have applied these two standards will facilitate the review of the trial court's application of the statute in the case presently before us.

It is a well settled rule of law in Indiana that an exemption statute is to be strictly construed against the person seeking its benefit whenever there is an ambiguity in the statute. *Gross Income Tax Division v. National Bank & Trust Co.* (1948), 226 Ind. 293, 298, 79 N.E.2d 651, 655; *State v. Farmers Tankage, Inc.* (1969), 144 Ind. App. 392, 393, 246 N.E.2d 409, 410; *Storen*

---

1. Repealed by Acts 1980, P.L. 52, Sec. 2. For present provision *see* IC 6–2.5–5.

2. Repealed by Acts 1980, P.L. 52, Sec. 2. For present provision *see* IC 6–2.5–2.

3. Repealed by Acts 1980, P.L. 52, Sec. 2. For present provision *see* IC 6–2.5–3–4(a).

4. Repealed by Acts 1980, P.L. 52, Sec. 2. For present provision *see* IC 6–2.5–3.

*v. Jasper County Farm Bureau Cooperative Assoc., Inc.* (1936), 103 Ind.App. 77, 79, 2 N.E.2d 432, 433.

*Farmers Tankage* involved an interpretation of a section of the exemption statute before that section contained any explicit "directness" requirement. The trial court allowed a claim of exemption on the purchase of a truck used to collect dead animals from which the taxpayer manufactured feed. The appellate court, in affirming the trial court, implied that had the word "directly" been used in the statute to modify the phrase "used in such production," an ambiguity then would have existed requiring strict construction against the taxpayer and, consequently, a possible denial of the exemption. *See RCA*, 310 N.E.2d at 99.

In *RCA*, the Second District interpreted the "double-directness" language that then appeared in Section 39(b)(6). At issue was whether air conditioning or environmental control equipment was exempt as being "directly used ... in the direct production" of television picture tubes. The court applied its reading of *Farmers Tankage* to conclude that Section 39(b)(6) was rendered ambiguous by the inclusion of the "directness" requirements. The court rejected RCA's argument that the statutory exemption encompassed all equipment that was "an integral part of the manufacturing process," 310 N.E.2d at 100. In concluding that the repetition of the directness requirement by the legislature was an effort to avoid the "overly broad judicial construction of the single directness requirement in other states," 310 N.E.2d at 100, the court strictly construed the exemption statute against RCA and reversed the judgment of the trial court which had found the equipment to be exempt.

The scope of the exemption permitted by "double-directness" language was again at issue in *Indiana Department of Revenue v. American Dairy of Evansville, Inc.* (1975), 167 Ind.App. 367, 338 N.E.2d 698, a case involving items purchased and used by a milk producer. The First District was guided by a standard of strict construction consistent with the holding in *RCA*. While the exemptions for purchases of insecticides and cleaning compounds were upheld due to specific legislative grant,[5] the exemption for cleaning equipment[6] was disallowed because of its lack of direct impact on the production of milk. The exemptions claimed for electricity used at a storage facility to preserve the end product and for the cases in which the milk was delivered were similarly disallowed. The court would not go so far as to require an item be "actually incorporated into the final product," 338 N.E.2d at 702, but was strict in its demand that an item be "directly used in direct production." 338 N.E.2d at 702. Exemptions were upheld for refrigeration equipment, ice, dry ice and milk cans used at the production plant.

The only Indiana case interpreting the single-directness requirement of Section 39(b)(4) here at issue is *Indiana Department of Revenue v. Indianapolis Transit System, Inc.* (1976), 171 Ind.App. 299, 356 N.E.2d 1204 involving a company which provided public bus transportation. The company did not pay tax on items which they claimed were "reasonable and necessary to the furnishing of public transportation." 356 N.E.2d at 1206. The company justified its claim for exemption on the basis that it was required to provide:

> "... services to its passengers which involve much paper work such as publications concerning financial matters, insurance, schedules, routes and rates. It must provide passenger stations, handle baggage, sell tickets and buses must be clean and safe for the passengers."

356 N.E.2d at 1209. The court seized upon the language used by Judge White in *RCA* implying that a single-directness requirement might allow a broader judicial construction than double-directness. 356 N.E.2d at 1208. The court justified its affirmation of the trial court's allowance of

---

5. IC 6–2–1–39(b)(1).

6. Sponges, scouring pads, towels, mops and wipers.

the claimed exemptions in part by the conclusion "ITS could not continue operating without the purchases it claimed should be exempted" and "in light of the necessity of the items purchased to the operation of ITS." 356 N.E.2d at 1209.

A further application of the double-directness test arose in *State v. Calcar Quarries, Inc.* (1979), Ind.App., 394 N.E.2d 939, a case involving a corporation which operated a stone quarry, asphalt plant and concrete facility. The trial court allowed the claimed exemptions for vehicles and equipment used to transport raw materials from the quarry to the processing plant, repairs and parts for the vehicles and equipment, and the bins used to hold the raw materials during a screening process. In affirming the trial court, the First District emphasized the trial court's finding of "Calcar's integrated operation." 394 N.E.2d at 942. Exemptions for rental of a crane used in constructing a new building and for a payloader used solely for cleaning and maintenance were disallowed.

Recently, in a case similar to *Calcar*, the Indiana Supreme Court had the occasion to review the Second District's interpretation of Section 39(b)(6). *Indiana Department of State Revenue v. Cave Stone, Inc.; Indiana Department of State Revenue v. Meshberger Stone, Inc.* (1983), Ind., 457 N.E.2d 520.[7] These cases involved two companies engaged in the mining of stone from their respective quarries and hauling that stone to their mills for processing. At issue was whether the transportation vehicles and equipment, including parts and repairs, used to get the crude stone to the mill and the processed stone from the mill to the stockpile were exempt from taxation by virtue of being directly used in direct production.

The Supreme Court found that the Second District, in denying the exemptions, had taken the requirement of strict construction too far, narrowing the applicability of the statute beyond the legislature's presumed intent. 457 N.E.2d at 524. The Second District, in *Indiana Department of Revenue v. Cave Stone, Inc.* (1980), Ind. App., 409 N.E.2d 690, *reh. den.* 427 N.E.2d 922, had expressed disagreement with the holding in *Calcar*, particularly the extension of the scope of the exemption statute to the integrated operation involved in the processing of an end-product.

The Supreme Court, however, agreed with the interpretation used in *Calcar* and adopted as the statement of the issue whether the transportation is an integral part of the production or processing of the stone. 457 N.E.2d at 524. In resolving this issue, the Supreme Court found "that the production or processing begins ... at the quarry and ends at the time the stone is stockpiled. The production process is continuous and indivisible." 457 N.E.2d at 524.

The issue so stated needed no reference to single or double directness. The issue was reduced to a practical and understandable examination of an integrated process involved in manufacturing.[8] However, the court made clear that strict construction was still the rule and there must be an "immediate link with the product being produced" before an exemption would be allowed. *See U.S. Steel*, 425 N.E.2d at 662.[9]

■ We, as the courts before us, believe the exemption statute, IC 6–2–1–39(b)(4), should be strictly construed against the taxpayer. This belief, however, is not based on the result suggested in *Farmers*

---

7. On transfer from (1980), Ind.App., 409 N.E.2d 690.

8. Although the Second District in *RCA* had rejected an attempt to extend the exemption to equipment solely on the basis of it being "an integral part of the manufacturing process," 310 N.E.2d at 100, the Supreme Court found the result in *RCA* not inconsistent with its approach in *Cave Stone*, reasoning that air conditioning has only an economic effect on the production

of television tubes while without the equipment in *Cave Stone* there could be no production at all.

9. In *U.S. Steel* the Fourth District approved the extension of the exemption to safety equipment that was "not only essential and integral to the production of steel but was directly used by U.S. Steel in direct production." 425 N.E.2d at 664.

*Tankage* that the statute becomes ambiguous by the mere inclusion of the word "directly." We cannot say, as has been done in analogous cases in the past, the phrase "used or consumed in the rendering of public transportation" is unambiguous as compared with the phrase *"directly used or consumed."* In terms of locating the periphery of the exemption, the same ambiguity exists in either version. Therefore we are required to construe the exemption statute involved here strictly against the Railroad. *Storen v. Jasper County Farm Bureau Cooperative Assoc.* (1936), 103 Ind.App. 77, 2 N.E.2d 432. We need not, however, resort to a finding of no directness, single or double directness in order to reach this conclusion.

However, as is emphasized by the Supreme Court's disagreement with the Second District in *Cave Stone,* strict construction should not be taken so far that the intention behind the legislative grant of the exemption is overlooked. The court in *U.S. Steel, supra* also cautioned against an overly strict approach in order to remain "consistent with the obvious legislative purpose to encourage industrial growth by allowing an exemption for items closely connected with the production of goods." 425 N.E.2d at 664.

Although *Cave Stone* involved an interpretation of Section 39(b)(6), the holding there is applicable by analogy to the present case and to the interpretation of Section 39(b)(4). The Supreme Court has indicated the recommended approach to the question of an exemption statute's applicability is to consider a particular item's relation to the full, continuous and indivisible production process, not whether an item becomes part of the finished product, *American Dairy, supra,* or has a transformational effect on the end product, *Cave Stone, supra.*

Just as the manufacture of aggregate stone involves a continuous process, so does the rendering of public transportation. An item need not be in direct contact with the rails to be directly used or consumed in the rendering of transportation.

A railroad is a system and, in order for the railroad to provide effective transportation, all elements of that system must be furnished including, but not limited to, maintaining railroad lines, transporting workers and maintaining supply and repair facilities. This approach is consistent with the wide range of exemptions anticipated in the public transportation context by the court in *Indianapolis Transit.*

We do not believe the *Cave Stone* standard varies much, if at all, from the "necessity towards operation" approach of *Indianapolis Transit.* The difference in what the two cases might allow lies primarily in the distinction between what is an integral part of manufacturing a product as opposed to what is an integral part of rendering transportation. The latter is a broader concept.

To the extent the cases should differ in that one interprets a statute involving "single-directness" and the other "double-directness," we recognize the difference only in a slightly broader construction of the "single-direct" statute. We are not saying the words "direct" and "directly" should not be given any effect. We assume the words were used by the legislature intentionally to have an effect on the meaning of the statute. *Engle v. City of Indianapolis* (1972), 151 Ind.App. 344, 279 N.E.2d 827. However, given the fact that the use of those words is what has caused courts to conclude the statute is ambiguous, we think the main focus should be on an item's impact on the integrated process or system with respect to which the legislature sought to encourage development by the grant of exemptions. Accordingly, the mere failure of the trial court to use the word "directly" in its finding does not constitute error.

The Department further raises as an issue the failure of the trial court to apply the regulations 45 IAC 2–3–11, 12 and 13 in determining which items purchased by the Railroad were entitled to exemption from tax. The definitive proviso contained in the statement of the "General Rule" in each of these regulations is that to be exempt the

property in question must have "a positive effect on the movement of persons or property." A similar attack was waged by the Department in *U.S. Steel, supra,* where error was alleged in the trial court's rejection of the "positive effect" test contained in 45 IAC 2–3–20 as it applied to Section 39(b)(10). In responding to this argument the Fourth District said:

"The test requires the equipment to have a 'positive effect' upon the article being produced. 'Positive effect' is not defined in the regulation, and it is a particularly troublesome phrase because it appears nowhere in the exemption statute nor can we find for it a basis in case law."

The term 'positive' has so many uses it only adds to the ambiguity of the statutory requirement of 'direct production.' We have no reason to believe a 'positive effect' on the product is any more direct than a 'negative effect.'

The Department's regulation further provides three factors which must be considered in determining whether property is directly used or consumed: 1) physical proximity, 2) temporal proximity, and 3) an active causal relationship. U.S. Steel contends, and we agree, those factors require the taxpayer to engage in so much guesswork it is virtually impossible to predict with any certainty how the Department will ultimately weigh the various factors. How close to what must the equipment be related in space and time to satisfy the Department's notion of proximity? Proximate cause? Immediate cause? Direct cause? What about multiple causation and intervening causes?

Moreover, the manner in which the regulation has been interpreted seems to us to go far beyond the meaning of the statute as interpreted in *RCA* and *American Dairy.* The air conditioning equipment in *RCA* failed to qualify because it did not have an immediate effect on the

product or the manufacturing process, not because it had a negative effect on the television tubes or bore no causal relationship to the product. The concept of causation introduces an element into the equation which leads to a too narrow construction of the exemption statute. We find it is too vague and misleading to provide an effective and accurate guide for taxpayers."

425 N.E.2d at 665, 666.

■ The "positive effect" test and the three factors involving proximity and causation found "too vague and misleading" by the court in *U.S. Steel* appear similarly in 45 IAC 2–3–11, 12 and 13. As such the regulations do not control the interpretation of Section 39(b)(4) and the trial court was not in error by disregarding them. *Accord Cave Stone, Inc., supra.* [10]

■ We must now determine whether the trial court's conclusion that certain items were exempt from tax by virtue of being used or consumed in the rendering of public transportation is contrary to the law.

The exemptions to which the Department objects affect several categories of items purchased by the Railroad:

1. Tools and equipment used to repair and maintain rolling stock and track;

2. Items used for repair and maintenance of the Railroad's buildings;

3. Vehicles (other than locomotives or rolling stock) used primarily for transportation of track maintenance crews;

4. Items used for repairs and maintenance of the vehicles in (3) above;

5. Items used in general administrative and managerial operations such as office equipment, uniforms and locks and keys.

These categories of items we find to be clearly within the *Cave Stone, Inc.* concept of direct use or consumption in the inte-

10. The Department argues additionally that the regulations referred to specify certain types of property as non-exempt. These references appear under the heading "Applications of [the] general rule." As such, they must be deemed to fall within the general rule since they are dependent upon it.

grated operation of providing public transportation. The items are needed and used by the Railroad in effectively providing transportation service. They are an integral part of the Railroad's rendering of public transportation.

Finally, we agree there may · be some specific items incorrectly labeled or excluded by the trial court. They are minor in import and the Department, wisely we think, did not belabor its argument by attempting to argue them on an item-by-item basis. Accordingly, we find any potential error in their specific exclusion has been waived.

Affirmed.

STATON, P.J., and HOFFMAN, J., concur.