**INDIANAPOLIS PUBLIC TRANSPOR-
TATION CORPORATION, Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE
REVENUE, et al., Respondent.**

No. 49T05–8611–Ta–00033.

Tax Court of Indiana.

July 9, 1987.

William K. Byrum, Byrum, Gagnon &
Diehl, Indianapolis, for petitioner.

Linley E. Pearson, Atty. Gen. by Ted J.
Holaday, Deputy Atty. Gen., Indianapolis,
for respondent.

FISHER, Judge.

### STATEMENT OF THE CASE

This is an appeal from a final determina-
tion of the Respondent assessing special
fuel tax for 1982, 1983, and 1984 in the sum
of $1,740.96.

The facts are undisputed. The Petition-
er, Indianapolis Public Transportation Cor-
poration, is a public transportation corpora-
tion organized pursuant to IND.CODE 36–
9–4 (1982). Petitioner operates vehicles fu-
eled by diesel fuel. Diesel fuel is a fuel

designated as a special fuel and subject to the tax imposed by the Special Fuel Tax Law, IC 6–6–2.1–101 *et seq.* (1982). The vehicles powered by diesel fuel and the subject of this action are wreckers and automobiles. Petitioner operates coaches to transport paying passengers. The wreckers are used to haul disabled coaches from the point of breakdown to the Petitioner's garage. The automobiles are used by supervisors to carry out their responsibilities, which are: (a) to maintain an observation on coaches, including headway, running time, frequent needs, passenger loading and unloading; (b) to supervise passenger loading and unloading; (c) to report any service needs, required re-routing, construction obstacles, fires, or detours; (d) to inspect and report the condition of streets, shelters, and disabled coaches; (e) to photograph and do preliminary investigation of accident scenes involving Respondent's vehicles; and (f) to respond to calls for assistance on in-service coaches. When not in use these automobiles are stored in Respondent's garage. If a coach becomes disabled and there are no other means available, the supervisor may transport passengers to their destination in these automobiles. There are also certain management personnel who have diesel powered automobiles and are on call 24 hours a day. They are required to respond to any and all emergencies as they occur. These automobiles are kept by these management personnel when not in use. The tax assessed was for diesel fuel used in the wreckers and the aforesaid automobiles.

Petitioner filed a motion for summary judgment. The Court may grant summary judgment for either party. TR56.

## DISCUSSION AND DECISION

IC 6–6–2.1–301(4) provides:

The following transactions are exempt from the special fuel tax:

. . . .

(4) Special fuel sold to a public transportation corporation established under IC 36–9–4 and used for the transportation of persons for compensation within the territory of the corporation.

The Petitioner contends that the language "used for the transportation of persons for compensation" is ambiguous in that it does not mean just the coaches but also the support vehicles such as the wreckers and automobiles without which the Petitioner could not operate. Petitioner further contends that this language is similar to that of the sales tax exemption statute, which has been interpreted by the Indiana Court of Appeals as exempting from sales tax those items without which the taxpayer could not continue to provide public transportation and which constitute a necessary and integral part of the rendering of public transportation. *Indiana Department of State Revenue v. Indianapolis Transit Systems, Inc.* (1976), 171 Ind.App. 299, 356 N.E.2d 1204; *Indiana Department of State Revenue v. Indiana Harbor Belt Railroad Co.* (1984), Ind.App., 460 N.E.2d 170. The Petitioner contends that the Court should grant the exemption herein on the same theory. Respondent contends that the statute is not ambiguous and is not in need of construction; that if the legislature intended as Petitioner argues, the phrase "and used for the transportation of persons for compensation" would not be necessary. Respondent further contends that regulation 45 IAC 10–3–5 (1984), which says in part:

(a) Special fuel sold to or used by a public transportation corporation is exempt so long as the special fuel is placed into the fuel supply tank of a motor vehicle operated by a public transportation corporation for the sole purpose of transporting persons for compensation within the Indiana territory of that corporation.

has the effect of law and that it likewise governs. Respondent also argues in response to Petitioner's contention that the sales tax is a different tax imposed for different reasons than a special fuel tax and the language is materially different.

Both parties are to be commended for a thorough presentation of the issues. The resolution of these issues is neither easy nor obvious.

At the outset, the Court must decide whether IC 6–6–2.1–301(4) is ambiguous. "The bedrock rule of statutory construction is that a statute clear and unambiguous on its face need not and cannot be interpreted by a court." *Economy Oil Corp. v. Indiana Department of State Revenue* (1974), 162 Ind.App. 658, 321 N.E.2d 215, 218. A simple disagreement between the parties does not necessarily constitute ambiguity. Each party has advanced well reasoned theories as to the true meaning of IC 6–6–2.1–301(4), which persuades the Court to find that the statute is ambiguous. *See Indiana Department of State Revenue v. RCA Corp.* (1974), 160 Ind.App. 55, 310 N.E.2d 96.

The Respondent is correct in stating that in the event the exemption statute is found to be ambiguous, it must be strictly construed against the person seeking the benefit of such statute. *Indiana Harbor,* 460 N.E.2d at 174–75. Nevertheless, this Court must not lose sight of the legislative purpose of the exemption by construing the statute too narrowly. *Id.; Indiana Department of State Revenue v. Cave Stone, Inc.* (1983), Ind., 457 N.E.2d 520.

Two cases, *Indiana Harbor* and *Indianapolis Transit,* have dealt with a similar exemption under the sales and use tax statute, and are offered by Petitioner as persuasive authority in construing the phrase "used for the transportation of persons for compensation." The Respondent argues that these cases should not be considered because they deal with a different statute and with substantially different statutory language. Both cases dealt with IC 6–2–1–39(b)(4),[1] which provided:

(b) Nor shall the state gross retail tax apply to any of the following transactions:

. . . .

(4) The sale, storage, use or other consumption in this state of tangible personal property or service which is directly used or consumed in the rendering of public transportation of persons or property.

The Respondent's main objection centers on the fact that the sales and use tax exemption applies to a much wider range of public transportation providers, while the statute at issue in this case applies to only a few entities. This distinction would be useful if the issue pertained to *who* was entitled to the exemption; in this case, that point is already clear. The question remains: when is the fuel used by the public transportation corporation actually "used for the transportation of persons for compensation"? In this sense, the sales tax cases provide guidance because the courts are construing very similar language. Under both exemption statutes, the central purpose is to encourage the development of and maintenance of the efficient provision of public transportation. Under the special fuel tax exemption statute, the legislature chose to grant the exemption to only a few entities rather than the entire public transportation industry.[2] The obvious reason for this difference is that the revenues generated by the special fuel tax are used for the maintenance and improvement of bridges, highways, roads, and streets throughout the state, *see* IC 6–6–2.1–702, 703; it would be senseless to grant the special fuel exemption to the entire industry since they constitute the primary taxpayers. The legislature has, however, opted to exempt public transportation corporations from most, if not all, taxation.[3]

1. Repealed by Acts 1980, P.L. 52, Sec. 2. For present provision, see IC 6–2.5–5–27.

2. The special fuel exemption is also granted to public transit departments of municipalities and to common carriers of passengers, including businesses operating taxicabs. IC 6–6–2.1–301(5), (6).

3. The property of public transportation corporations is exempt from property tax under IC 36–9–4–52 (1982); fares collected by the public transportation are exempt from gross income tax under IC 6–2.1–3–27(b)(1) (1982); as discussed above, they are exempt from the sales and use tax under IC 6–2.5–5–27; fares collected by a public transportation corporation are exempt from the adjusted gross income tax under IC 6–3–2–3.5 (1982). Certain proceeds from bonds issued under IC 36–9–4 and the receipt of interest thereon are exempt from taxation. IC 6–8–5–1 (1982); IC 36–9–4–44, 45 (1982).

In *Indianapolis Transit,* the Court of Appeals found that the corporation's purchases, which were reasonably and necessarily incurred in the operation of its business, were exempt from the sales and use tax. First the court distinguished the exemption for public transportation from the so-called "double-direct" exemption for manufacturing, which the courts have construed very narrowly. Finding that the single use of the term "direct" in the transportation statute might allow a broader judicial construction than that used in the double-direct statute, the court also noted that the corporation "could not continue operating without the purchases it claimed should be exempt." *Indianapolis Transit,* 356 N.E.2d at 1209. The court concluded that in light of the necessity of the purchases to the corporation's operations and the broader judicial construction allowable for a single-direct statute, the trial court did not err in finding the corporation's purchase to be exempt. *Id.*

In *Indiana Harbor,* the Court of Appeals was again confronted with the issue of whether certain categories of items were "directly used or consumed in the rendering of public transportation of persons or property." The court decided the issue not on the basis of whether these items were "directly" used, but instead focused on whether the items were necessary and integral to the rendering of public transportation. Analogizing recently decided manufacturing exemption cases, the court reasoned that

> [j]ust as the manufacture of aggregate stone involves a continuous process, so does the rendering of public transportation. An item need not be in direct contact with the rails to be directly used or consumed in the rendering of transportation. A railroad is a system and, in order for the railroad to provide effective transportation, all elements of that system must be furnished including, but not limited to, maintaining railroad lines, transporting workers and maintaining supply and repair facilities. This approach is consistent with the wide range of exemptions anticipated in the public transportation context by the court in *Indianapolis Transit.*

> . . . .

> The difference ... lies primarily in the distinction between what is an integral part of manufacturing a product as opposed to what is an integral part of rendering transportation. The latter is a broader concept.

*Indiana Harbor,* 460 N.E.2d at 175.

Having decided to use the "necessary and integral" test, the court proceeded to find that the following categories of items were exempt as having been directly used or consumed in rendering of public transportation:

1. Tools and equipment used to repair and maintain rolling stock and track;

2. Items used for repair and maintenance of the Railroad's buildings;

3. Vehicles (other than locomotives or rolling stock) used primarily for the transportation of track maintenance crews;

4. Items used for repair and maintenance of the vehicles in 3 above;

5. Items used in general administrative and managerial operations such as office equipment, uniforms and locks and keys. *Id.* at 176.

Although not controlling, *Indianapolis Transit* and *Indiana Harbor* provide a useful starting point in construing IC 6–6–2.1–301(4). The "necessary and integral" test more likely fulfills the legislative purpose of the statute than does a literal construction.[4]

---

**4.** The 1986 Indiana General Assembly in P.L. 73–1986 added IC 6–6–2.1–203, providing for taxation of alternative fuels. A section (b) was added to IC 6–6–2.1–301, which exempts a public transportation corporation as described in IC 6–6–2.1–301(a)(4). This exemption applies to all motor vehicles owned. This is further indication of the legislative intent that IC 6–6–2.1– 301(a)(4) not be construed as narrowly as Respondent contends. Also a comparison of the Motor Fuel Tax Law, IC 6–6–1–1, 4 (repealed by Acts 1979, P.L. 79, § 1) (current version at IC 6–6–1.1–101 et seq.), which was in effect at the time the special fuel tax statute was enacted, likewise suggests a broader legislative intent than that contended by Respondent.

The Respondent contends that to construe the phrase "used for the transportation of persons for compensation" any way other than literally would render the phrase meaningless. Petitioner agrees that the legislature must have intended that phrase to limit the application of the exemption; however, the Court finds that this limitation is the equivalent of the "necessary and integral" test.

The Court next addresses the applicability of 45 IAC 10–3–5. The regulation was not issued until 1983 and therefore it is inapplicable in any event to the assessment of the tax for the year ended 1982. The statute was enacted in 1980 and even then, the statute was merely a restatement and recodification of prior law. *See* IC 6–6–2–4; 6–6–2.1–105. The presumption of legislative acquiescence is proper only if there has been "a long adhered to administrative interpretation dating from the legislative enactment, with no subsequent change having been made in the statute involved...." *Baker v. Compton* (1965), 247 Ind. 39, 211 N.E.2d 162, 164. Even though properly adopted regulations have the same force and effect as law, an administrative agency

> cannot enlarge or vary, by the operation of such rules, the powers conferred upon them by the Legislature, or create a rule out of harmony with the statute. If the rules are in conflict with the state's organic law, or antagonistic to the general law of the state ... they are invalid.

*Potts v. Review Board of Indiana Employment Security Division* (1982), Ind. App., 438 N.E.2d 1012, 1015–16 (citations omitted).

Since the Court adopts the "necessary and integral" test, the regulation must be held invalid because it impermissibly narrows the application of the exemption granted by the legislature.[5]

The Court next must determine which of the vehicles at issue, if any, are "necessary and integral" to the transportation of persons for compensation as a matter of law.

■ Since the wreckers are used to tow disabled coaches to the Petitioner's garage for repair, these vehicles are "necessary and integral" to Petitioner's operations. Therefore, the special fuel used in the wreckers is exempt from special fuel tax under IC 6–6–2.1–301(4).

■ Since the automobiles driven by Petitioner's supervisors are used only for purposes as set out above and the supervisors are not permitted to take these vehicles home, the automobile vehicles are "necessary and integral" to Petitioner's operation. Therefore the special fuel used in these automobiles is exempt from the special fuel tax under IC 6–6–2.1–301(4).

■ The fuel used in the automobiles driven by certain management personnel is also claimed to be exempt. Petitioner listed the job titles of these personnel as: general manager, assistant general manager of street operations, director of transportation, assistant general manager of administration, and the equipment manager. Petitioner also stated that these persons were required to respond to any and all emergencies as they occur, twenty-four hours a day. Management personnel may take these automobiles to their homes. Since there are other vehicles and personnel available to respond to emergencies, these vehicles are not "necessary and integral" to the operation of the Petitioner and the special fuel used in such automobiles is not exempt under IC 6–6–2.1–301(4).

Accordingly, the Respondent is ordered to refund such of the tax, penalty and interest as is attributable to the wrecker and supervisor vehicles together with statutory interest thereon.

---

5. Furthermore, this regulation does not appear to apply to Petitioner because it defines a "public transportation corporation" as a "municipally owned public transportation system." 45 IAC 10–3–5(b). Petitioner is not municipally owned, rather it is a municipal corporation organized under IC 36–9–4. IC 6–6–2.1–301(4) extends only to public transportation corporations organized under IC 36–9–4.