# Commonwealth, Appellant, *v.* High Welding Company.

Argued May 22, 1967. Before BELL, C. J., MUSMAN-NO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*Edward T. Baker,* Deputy Attorney General, with him *William C. Sennett,* Attorney General, for Commonwealth, appellant.

*Richard C. Fox,* with him *T. Roberts Appel, II,* and *Appel, Ranck, Herr & Appel,* and *McNees, Wallace & Nurick,* for appellee.

OPINION BY MR. JUSTICE JONES, March 15, 1968:

The Commonwealth of Pennsylvania appeals from a judgment of the Court of Common Pleas of Dauphin County which, in its effect, directed the payment of a refund of a sales tax to High Welding Company (taxpayer).

The taxpayer, primarily engaged in the fabrication of steel products with its principal office located in Lancaster, during the period from March 1, 1961 through August 31, 1962, was a subcontractor of bridge construction work for a prime contractor who was under contract with the State of Maryland to construct certain highways in Maryland. It was the taxpayer's contractual obligation to fabricate steel bridge parts according to certain specifications, to cause such parts to be transported to Maryland and to incorporate such parts into new bridge structures in Maryland.

The taxpayer ordered the necessary steel from Bethlehem Steel Company in Pennsylvania. The Commonwealth concedes that this steel, *when ordered,* was specifically earmarked and segregated for the taxpayer's particular bridge construction jobs in Maryland. After the steel had been so segregated and set apart by Bethlehem, it was inspected at Bethlehem's plant by a representative of the concern which acted as the authorized inspector for the State Roads Commission of Maryland (Commission).[1] After such inspection and approval of the steel, this steel was then transported by the taxpayer from Bethlehem to its Lancaster plant. At that time—the time of purchase—the taxpayer paid a sales tax of $11,630.56 on such steel.[2]

---

[1] The fact of such conceded inspection is of importance in that it proves that the steel—the tangible property the sale of which is sought to be taxed—was, *from the time of ordering,* designated for shipment to Maryland.

[2] The taxpayer concedes that $520.62 of the tax was properly imposed.

548

Some time thereafter, the taxpayer sought a refund of the tax paid on this steel. After having unsuccessfully followed the procedural steps necessary to secure such refund, the taxpayer appealed to the Court of Common Pleas of Dauphin County and, after the material facts had been stipulated by the parties, that court found that the taxpayer was entitled to a refund of the tax.

In the court below the taxpayer argued its nonliability for the tax on three grounds: (1) that the transaction was a nontaxable "resale" of the steel; (2) that the transaction was excluded by reason of the "manufacturing exemption"; (3) that the transaction was excluded because the steel was in the Commonwealth only on an "interim basis".[3] The court below held that the transaction constituted a nontaxable "resale" and, in view of that conclusion, it did not determine (2) and (3), supra.

When the steel arrived at the taxpayer's plant it was again inspected by the Commission's authorized inspector to determine whether the steel items were the same items which had been inspected at Bethlehem's plant. When this steel arrived at the taxpayer's plant it was in rough and unfinished form. The taxpayer then cut, shaped and welded these steel items so that they formed finished component parts of the particular Maryland steel highway bridges. Each of the contemplated Maryland bridges was specifically designed and

---

[3] "(b) The interim keeping, retaining or exercising any right or power over tangible personal property for the sole purpose of subsequently transporting it outside this Commonwealth for use outside this Commonwealth, or for the purpose of being processed, fabricated or manufactured into, attached to or incorporated into other personal property to be transported outside the Commonwealth for use solely outside this Commonwealth.": Act of March 6, 1956, P. L. (1955) 1228, §2(n), (4)(b), as amended, 72 P.S. §3403-2(n)(4)(b).

the products when shipped were so constructed that by their use the bridges could be erected. During the course of fabrication by the taxpayer, there was continuous inspection by the Commission's authorized inspector.

After the fabrication had been completed and prior to the shipment of the bridge parts, such parts were again inspected. The component parts of each bridge were shipped then by the taxpayer to the sites in Maryland where they were again inspected. It is clear beyond question that the steel from the time it was ordered at Bethlehem's plant and throughout the course of events which finalized in the receipt of the bridge parts in Maryland was at all times earmarked and set aside for the particular Maryland jobs.

In concluding that the transaction was a nontaxable "resale" of the steel, the court below stated: "We are concerned in this case with the Tax Act of 1963 for Education (formerly known as the Selective Sales and Use Tax Act), Act of March 6, 1956, P. L. (1955) 1228, 72 P.S. 3403-1 et seq., as amended. This act imposes a tax on the sale at retail of certain types of property. *Excluded* from the definition of sales at retail are transfers for the purpose of resale. 72 P.S. 3403-2(j). [Taxpayer] contends that its activities constituted a 'resale', that the tax was erroneously paid and that it is entitled to a refund. The section defining 'resale' with which we are here concerned is as follows: '(2) *The physical incorporation of personal property as an ingredient or constituent into other personal property,* which is to be sold in the regular course of business or the performance of those services described in subclauses (2), (3) and (4) of clause (j) of this section upon personal property which is to be sold in the regular course of business or *which the person incorporating such property has undertaken at the time of pur-*

chase to cause to be transported in interstate commerce to a destination outside this Commonwealth.' 72 P.S. 3403-2(h)(2). (emphasis added)

"We are here concerned not with an exemption provision but whether [taxpayer] falls within the taxing statute as enacted by the legislature. We are thus governed by the rule that a taxing statute must be construed most strongly and strictly against the government, and if there is a reasonable doubt as to its construction or application to a particular case, the doubt must be resolved in favor of the taxpayer. [citing authorities]. With this in mind we turn to the provisions of the act and the facts of this case. Under the interpretation given the statute by this court, the italicized portion of the above-quoted statute is a 'resale'. [Taxpayer's] fabricating of the steel at its Lancaster plant obviously falls within the initial provision of clause (h)(2) in that these activities involved the 'physical incorporation of personal property as an ingredient or constituent into other personal property . . .'. The only question remaining is whether [taxpayer] has satisfied the requirement that 'the person incorporating such property has undertaken at the time of purchase to cause (the property) to be transported in interstate commerce to a destination outside this Commonwealth.'. This requirement must necessarily be a matter of proof in each case. Under the facts as stipulated in this case it is clear that the specific steel in question ordered by [taxpayer] was at the time of purchase intended for use in Maryland and in fact was ultimately used in erection of bridges in Maryland. [Taxpayer] thus undertook at the time of purchase to cause and in fact did cause this steel to be transported in interstate commerce to a destination outside of Pennsylvania. [Taxpayer's] activities constituted a 'resale' within the

meaning of clause (h) (2) and hence did not fall within the taxing provisions of the statute."

We agree with the court below in its conclusion and the rationale which led to such conclusion. If the statutory language excluding transfers of tangible property for the purpose of resale from the impact of taxation has any meaning, its applicability to the factual posture of this record is beyond question.

In view of our conclusion we need not consider the Commonwealth's other contentions.

Judgment affirmed.

Mr. Justice COHEN took no part in the consideration or decision of this case.

––––––––

DISSENTING OPINION BY MR. JUSTICE O'BRIEN:

The majority ignores the clear meaning of the language in holding that appellee fits within the resale exclusion[1] in §2(h) (2) of the Sales and Use Tax Act. The instant situation constitutes a resale, says the majority, because it involves "the physical incorporation of personal property as an ingredient or constituent into other personal property . . . which the person incorporating such property has undertaken at the time of purchase to cause to be transported in interstate commerce to a destination outside this Commonwealth." It is clear to me that appellee *at the time of purchase* did not undertake to cause the steel it bought to be transported in interstate commerce to a destination outside this Commonwealth. The quoted language obviously refers to a situation where the purchaser orders the shipment to be shipped directly from the vendor to an out-of-state location. Surely, the situation where a purchaser buys steel, fabricates it in Pennsylvania,

––––––––

[1] Whether it is called an exclusion or an exemption is irrelevant in this case.

and then some months later ships it out of state, could not have been within the contemplation of the legislature when it enacted the instant language.

I would thus hold that appellee does not fit within the resale exclusion, and remand to the court below for consideration of whether either the manufacturing or the "interim basis" exclusion applies.

