629 A.2d 300

**USAIR, INC., Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 31, 1993.

Decided July 23, 1993.

304

John H. Enos, III, for petitioner.

Bart J. Deluca, Jr., for respondent.

Before CRAIG, President Judge, and DOYLE, PALLADINO, McGINLEY, SMITH, PELLEGRINI and FRIEDMAN, JJ.

PALLADINO, Judge.

USAir, Inc. (Taxpayer) appeals from an order of the Board of Finance and Revenue (BFR) which sustained a decision of the Board of Appeals (Board) denying Taxpayer's claim for a

refund of Pennsylvania use tax on its purchases of food, non-alcoholic beverages and related non-food supplies for the period February 1, 1986 through December 31, 1987. We reverse.

The parties stipulated to the facts which follow. Taxpayer is a public utility engaged in providing intrastate, interstate and international passenger and freight airline service as a common carrier. In the course of providing transportation services, Taxpayer regularly serves food, non-alcoholic beverages and related non-food supplies [1] to passengers and crew while in flight. Taxpayer designates certain flights as "meal flights" on the basis of three factors: 1) the proximity of the flight to what Taxpayer considers to be a "meal hour"; 2) the length of the flight; and 3) the activities of Taxpayer's competitors on comparable flights.[2] The manner in which the food is prepared and served, the type of dishes and packaging used and the accompanying non-food supplies are designed solely for Taxpayer's use during flight.

Taxpayer provides transportation services and related products, such as food and non-food supplies, to passengers for an all inclusive price. Passengers are not separately charged for any meal or snack.

By letter dated December 30, 1985, the Pennsylvania Department of Revenue (Department) advised Taxpayer that effective February 1, 1986, "[m]eals and related food purchases from caterers or other suppliers for use on flights originating in Pennsylvania will be taxable on their total cost to the airline." [3] This prospective change was not based on either a

---

1. Non-food supplies include cups, napkins, plasticware, straws, cardboard boxes for snacks and similar food-related items.

2. During the period at issue, it was the custom and practice of the airline industry to provide meals to passengers based primarily on these factors.

3. The letter also provided that "[s]oft drinks, liquor and malt beverages purchased for sale or use on flights originating in Pennsylvania will be taxable on an amount resulting from the application to such purchases of the ratio between total Pennsylvania passenger miles to total domestic passenger miles by the airline during the previous calendar year."

change in the Tax Reform Code of 1971 (Code) [4] or upon any ruling or regulation. Since the inception of sales and use tax in Pennsylvania (March 6, 1956) until January 31, 1986, all airline purchases of food and beverages were excluded from tax.

During the period February 1, 1986 through December 31, 1987, Taxpayer purchased food and beverages from various suppliers for consumption by passengers and crew while in flight. Taxpayer also purchased related non-food supplies. In accordance with the Department's letter, Taxpayer remitted, with its Sales and Use Tax Returns for this period, $2,167,817.76 in use tax on its estimated purchases of these items.

Taxpayer subsequently filed a Petition for Refund with the Board requesting a refund of use tax in the amount of $2,167,817.76, plus statutory interest. Following a hearing, the Board denied the refund in its entirety. Taxpayer appealed to the BFR which sustained the Board's decision. Specifically, the BFR held that Taxpayer's "purchases of passenger and crew meals[,] non-food supplies as well as alcoholic and non-alcoholic beverages are not directly used in the rendition of public utility service or held for resale." BFR's Order of July 26, 1989.

On appeal to this court, the primary issue presented [5] is whether food, non-alcoholic beverages and related non-food supplies furnished by Taxpayer to passengers and crew members during flight are directly used in the rendition of a public utility service, thereby qualifying for the exclusion from use tax provided in Section 201(*o* ) of the Code, 72 P.S. § 7201(*o* ).[6]

**4.** Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §§ 7101–10004.

**5.** Although Taxpayer asserts that its purchases of food, non-alcoholic beverages and related non-food supplies also are excluded from use tax under other provisions of the Code, our resolution of this issue makes unnecessary consideration of the other potentially applicable exclusions.

**6.** Review of a determination of the Board of Finance and Revenue shall be heard by this court on the record. Pa.R.A.P. 1551(a) and 1571(h).

■ Pursuant to Section 202(b) of the Code, a tax of six percent is imposed upon the "use" of tangible personal property within the Commonwealth. 72 P.S. § 7202(b). The Department and Taxpayer agree that Section 201(*o* ) excludes from this tax tangible personal property used directly in the rendition of a public utility service. Specifically, this statute,[7] in its definition of "use", incorporates the "public utility" exclusion, in pertinent part, as follows:

> (4) ... And provided further, That the term "use" shall not include—
>
> . . .
>
> (B) *The use or consumption of tangible personal property,* including but not limited to machinery and equipment and parts therefor, *and supplies* or the obtaining of the services described in subclauses (2), (3) and (4) of this clause *directly in any of the operations of*—
>
> . . .
>
> (iii) *The producing, delivering or rendering of a public utility service,* or in constructing, reconstructing, remodeling, repairing or maintaining the facilities which are directly used in producing, delivering or rendering such service. . . .

72 P.S. § 7201(*o* )(4)(B)(iii) (emphasis added).[8]

■ As a preliminary matter, we note that although "public utility service" is not expressly defined by the Code, this term has been deemed to have the same meaning for sales and use tax purposes as that developed in the area of public utility law. *See Commonwealth v. Equitable Gas Company,* 415 Pa. 113, 202 A.2d 11 (1964) (the absence of a definition of "public utility service" in the Selective Sales and Use Tax Act, a predecessor to the Code, indicates that the legislature did not wish to

**7.** Reference is made to Section 201 as it was in effect during the period at issue. This section was subsequently amended.

**8.** The rules of construction are clear that exclusions in tax statutes are to be strictly construed against the taxing body and in favor of the taxpayer to the extent that there is any reasonable doubt regarding the meaning of the statutory language. *Union Paving Company v. Commonwealth,* 148 Pa.Commonwealth Ct. 358, 611 A.2d 360 (1992).

disturb the categorization of "service" which had already been established by other statutory enactments, the Public Utility Commission and decisional authorities). Section 102 of the Public Utility Code (Utility Code) provides that the term "service":

> *[u]sed in its broadest and most inclusive sense,* includes any and all acts done, rendered, or performed, and *any and all things furnished or supplied* ... by public utilities ... in the performance of their duties ... to their patrons, employees, other public utilities, and the public. ...

66 Pa.C.S. § 102 (emphasis added).

■ Pursuant to Section 1501 of the Utility Code, a public utility, in the performance of its duties, is required to "furnish and maintain adequate, efficient, safe, and reasonable service and facilities ... *as shall be necessary or proper for the accommodation, convenience,* and safety of *its patrons, employees,* and the public." 66 Pa.C.S. § 1501 (emphasis added). This section also mandates that a public utility provide service which is "reasonably continuous and without unreasonable interruptions or delays." *Id.*

Relying upon the statutory provisions of both codes, Taxpayer asserts that its furnishing of food, beverages and related non-food supplies during flight constitutes an element of its public utility service. We agree.

First, we note that a public utility service includes "any and all things furnished or supplied" by Taxpayer in the performance of its duties. In the "broadest and most inclusive sense," "any and all things" certainly includes the food, beverages and related supplies furnished by Taxpayer during flight.

We find these items to be necessary and proper not only for the "accommodation" of both passengers and crew but for their "convenience" as well. Taxpayer designates certain flights as "meal flights" depending upon the proximity of the flight to a meal hour and the total duration of the flight. In this manner, Taxpayer accommodates the most basic need of its passengers and crew, and as a result, these individuals are

not inconvenienced by the prospect of missing a meal or of seeking alternative eating arrangements.

Moreover, by designating certain flights as "meal flights", Taxpayer is better able to provide its customers with air transportation service which is "reasonably continuous and without unreasonable interruptions or delays." *See Mitchell v. Sherry Corine Corp.*, 264 F.2d 831, 834 (4th Cir.), *cert. denied,* 360 U.S. 934, 79 S.Ct. 1453, 3 L.Ed.2d 1546 (1959) (the service of in-flight meals "facilitates the interstate operations of the airlines by obviating the delays incident to the service of meals at the airport").

Last, we find support in the Department's regulations which further define the scope of the public utility exclusion. In determining whether a particular structure or article is used directly in rendering a public utility service, the regulations provide that consideration is to be given to (1) the physical proximity of the items while in use and the proximity of time of their use to the rendition of the public utility service; (2) the causal relationship between the use of the item and the rendition of the public utility service; and (3) the character of the item as to whether it is in the nature of a general improvement to the premises which would serve various users or is particularly designed or constructed for public utility use. 61 Pa.Code § 32.34(a)(1).[9]

When applying these elements to the instant case, we find that all of them have been satisfied. Because the food, beverages and supplies furnished by Taxpayer are consumed by passengers and crew while on board the aircraft and during flight, these items are proximate in both physical location and time of use to Taxpayer's rendering of its public utility service. A causal relationship exists between Taxpayer's use of these items and its rendition of a public utility service because, as previously noted, common carriers are statutorily mandated to

---

9. This regulation also explains that the fact that particular property may be considered essential to the rendering of a public utility service because its use is required either by law or practical necessity does not, of itself, mean that the property is used directly by a public utility. 61 Pa.Code § 32.34(a)(1)(iii).

furnish service "as shall be necessary or proper for the accommodation [and] convenience" of its patrons and staff. Finally, the stipulated facts indicate that these items are particularly designed for Taxpayer's use during flight.

Therefore, based upon the foregoing analysis, we conclude that the food, non-alcoholic beverages and related non-food items furnished by Taxpayer to passengers and crew members during flight are directly used in Taxpayer's rendition of a public utility service. Accordingly, the order of the BFR is reversed and judgment is entered in favor of Taxpayer in the amount of $2,167,817.76 for use tax, plus statutory interest as provided by applicable law. Further, the Department is directed to issue a refund to Taxpayer.

## ORDER

AND NOW, July 23, 1993, the order of the Board of Finance and Revenue is reversed and the Prothonotary shall enter judgment in favor of USAir, Inc. in the amount of $2,167,817.76 for use tax, plus statutory interest as provided by applicable law, unless exceptions are filed within thirty (30) days of the date of this order.

It is further ordered that the Department of Revenue issue a refund to USAir, Inc. in the amount of $2,167,817.76, plus statutory interest.

PELLEGRINI, Judge, dissenting.

I respectfully dissent. I disagree with the majority's conclusion that food, non-alcoholic beverages and related non-food supplies used in food service are excluded from payment of the 6% use tax because of its finding that those items are used directly in providing a public utility service.[1]

---

1. Taxpayer is a common carrier that serves foods, snacks and beverages to its passengers and its flight crew. No separate charge is made to customers for the food service. Food service is not provided on all flights, but only on the flights Taxpayer designates because of duration or other airlines are serving meals on competing flights, or because the flight occurs around regular meal times.

Section 201(*o*)(4) of the Tax Reform Code of 1971 [2] (Tax Reform Code), 72 P.S. § 7202(b), excludes personal property from the tax if it is used directly in the rendition of public utility service. It provides:

(4) ... And provided further, That the term "use" shall not include—

(B) *The use or consumption of tangible personal property,* including but not limited to machinery and equipment and parts therefor, *and supplies* or the obtaining of the services described in subclauses (2), (3) and (4) of this clause *directly in any of the operations of—*

(iii) *The producing, delivering or rendering of a public utility service,* or in constructing, reconstructing, remodeling, repairing or maintaining the facilities which are directly used in producing, delivering or rendering such service. ...

61 Pa.Code 32.34(a)(1) sets forth a three-prong test to determine whether property is directly used in carrying out a "public utility service". It involves determining:

(i) The physical proximity of the items while in use and the proximity of time of their use to the production, rendition and delivery of the utility service;

(ii) The causal relationship between the use of the item and the production, delivery and rendition of the utility service;

(iii) The character of the item, as to whether it is in the nature of a general improvement to the premises that would serve various users or is particularly designed or constructed for public utility use.

Because the term "public utility" is not defined in the Revenue Code, the majority looks to Section 1501 of the Pennsylvania Public Utility Code (Utility Code), 66 Pa.C.S. § 1501, as an aid in interpreting whether food service falls within the ambit of public utility service. That provision requires utilities to "furnish adequate, efficient, safe and reasonable service ... as shall be necessary or proper for the accommodation, convenience and safety of its patrons, employ-

**2.** Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §§ 7101–10004.

ees and the public." Because meals are a "convenience" and an "accommodation" to passengers and flight crew, the majority finds that items used in food service are part of Taxpayer's public utility service.

The majority then goes on to say that since food service is a "convenience" or an "accommodation" recognized in Section 1501, it becomes part of the utility service, and, as part of, it must be "directly used" in carrying out that service. Only by looking at the more expansive language of Section 1501 unencumbered by the requirement that it be "directly used" can the majority arrive at its conclusion that food service items are excluded from the use tax.

I disagree with the majority's reasoning because rather than using Section 1501 as an aid in interpreting Section 201(o)(4) or 61 Pa.Code § 32.24(a)(1), the majority makes it the controlling provision in determining whether food service items are excluded from calculation of the use tax. Section 201(o)(4) of the Revenue Code requires that the personal property be "directly used" in providing utility service, and that a "convenience" or an "accommodation" by definition does not meet that standard. That provision requires something more than the item just being "convenient" or a "nice touch" for it to be "directly used"; it requires that it be integral in carrying out the utility service. Under the majority's interpretation, virtually everything used by any utility could be considered excluded as long as it was shown that it was "convenient" and "accommodates" customers or employees; it results in "directly used" meaning "anything used". If the General Assembly wanted to exclude for payment of a use tax everything that a common carrier used, it would have said so rather than limit the tax to those items that are only "directly used" in carrying out that service.

Other state courts in interpreting similar provisions have found that "directly used" means that the items must have a necessary and integral effect on carrying out the service to be exempt from the tax, a test that is accomplished in Pennsylva-

nia in 61 Pa.Code § 32.24. In finding that food service [3] was not directly used in carrying out the airline's transportation services, the Tax Court of Indiana, in a case involving the same plaintiff, *USAir, Inc. v. Department of Revenue,* 542 N.E.2d 1033 (Tax 1989) [4] stated:

> The service of food on certain flights to airline passengers is not necessary and integral in providing transportation. USAir contends that serving meals on flights is necessary to compete in the field of public transportation. However, passengers bargain for safe and efficient transportation when they purchase tickets and not for the food which may or may not be provided during the flight. There is no evidence that the food is furnished in order to make the actual service of air travel more effective. The food is only incidental to the airline's transportation service and, therefore, is not necessary and integral to providing transportation.

Affirming that decision, the Supreme Court of Indiana, 582 N.E.2d 777 (1991), went on to explain why food service is not an integral part of providing transportation services:

> Some commercial airlines furnish food and costly beverages during flights for the convenience and comfort of passengers to promote ticket sales. Some airlines, on the other hand, attempt to increase their market share in the commercial airline industry by boasting that they can offer cheaper fares because they have limited superfluous amenities such as food and drinks ... The food need not be considered more than an added amenity to air travel and merely incidental to airline's transportation services.

**3.** Section 58–441.6(u) of the Virginia Tax Code exempts:
[t]angible personal property sold or leased to an airline ... for use or consumption by such airline *directly in the rendition of its common carrier service.* (Emphasis added).

**4.** Indiana Code 6–2.5–5–27 provides:
Transactions involving tangible personal property and services are exempt from the state gross retail tax, if the person acquiring the property or service *directly uses or consumes* it in providing public transportation for persons or property. (Emphasis added).

Similarly, the Supreme Court of Virginia in *Commonwealth of Virginia v. United Airlines,* 219 Va. 374, 248 S.E.2d 124 (1978), in holding that food service was not directly used in providing airline transportation services, stated:

> The record shows that food and related items are not served on all United flights. Meals are served to passengers only when the time of those flights occurs around regular meal hours. The same fare is charged on flights between the same points even when food is not served. Under those circumstances, the service of food is considered a commercial amenity and an operating expense which is necessary in the competitive field of transportation by air. Thus, food and related items cannot be considered essential tangible personal property "used immediately and principally" by United to transport passengers by air in its role as a common carrier.

Because food service is an amenity, it does not meet the three-prong standard set forth in 61 Pa.Code § 32.31(a)(1). While it meets the first prong, because food and beverages are served during the flight, there is no causal relationship between providing airline services and providing food and beverages. As the Commonwealth's brief points out, "the airplane flies just as well without almonds and omelettes as it does with them."

I agree with the reasoning of the Indiana and Virginia courts and find that food service items used on flights is not an integral part of that service and not excluded from the use tax. Accordingly, I respectfully dissent.[5]

---

**5.** Because it found that food and beverage items were excluded from the payment of the use tax as they are used in the providing of a public utility service, the majority did not address Taxpayer's contentions that it was not required to pay the tax because its food and beverages were for human consumption and were for resale. While Section 204(29) of the Tax Reform Code, 72 P.S. § 7204(29), does not require the payment of tax for food or beverages for human consumption, that provision does not apply to food purchased from caterers as defined in 61 Pa.Code § 49.1(a).

USAir also contends that food, beverages and non-food items purchased from its vendors are excluded from taxation under Section 201(k)(8)(i) which excludes property purchased for resale. I would

follow the reasoning set forth in *Air Jamaica Ltd. v. State of Florida,* 374 So.2d 575 (Fla.App.1979); *Virginia v. United Airlines, supra,* and *American Airlines v. Department of Revenue,* 58 Ill.2d 251, 319 N.E.2d 28 (1974), all holding that transactions such as these are not sales for resale.